**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GREG ORPHEY,

Plaintiff,

v. No. CIV 14-886 RB/KK

CONOCOPHILLIPS COMPANY and
GABRIEL APARICIO,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Grey Orphey sued his former employer, Defendant ConocoPhillips, stating various state law causes of action. After removing the action to this Court, Defendants moved to dismiss on the basis of preemption. (Doc. 3.) Three months later, Plaintiff filed a motion to remand the case for improper removal (Doc. 13) and to amend his Complaint by adding non-diverse defendants (Doc. 14). By filing three motions challenging the Court's subject matter jurisdiction, the parties created a veritable jurisdictional thicket. Having reviewed the parties' submissions and arguments, the Court denies Defendants' Motion to Dismiss (Doc. 3), denies Plaintiff's Motion to Remand (Doc. 13), and grants Plaintiff's Motion to Amend (Doc. 14). Although the Court denies remand on the ground Plaintiff argued, granting the complaint amendment changes the relevant jurisdictional facts. Based on the amended complaint, the Court remands the case to state court.

## I. BACKGROUND

Plaintiff worked at Defendant ConocoPhillips' Wingate Fractionator in New Mexico for six and a half years. (Compl. ¶ 5, Doc. 1-1.) Allegedly, he started receiving retaliatory

reprimands after he complained about his supervisors' unethical practices. (Compl. ¶¶ 6-7.) Plaintiff encountered additional pushback from his supervisors when he took short-term disability leave in order to donate a kidney to his brother. (Compl. ¶¶ 13-15.) In reaction to his poor treatment, Plaintiff began speaking with union organizers. (Compl. ¶ 16.) Plaintiff's job was not unionized while he was employed with Defendant ConocoPhillips.

Plaintiff was eventually fired after complaining about a safety issue at work. (Compl. ¶ 29.) On March 7, 2013, Plaintiff questioned his superior, Mr. Frank Barton, when Supervisor Barton ordered another employee, Mr. Rubin Valdespino, to begin a work procedure. (Compl. ¶¶ 17-21.) Asking Supervisor Barton to reconsider his directives, Plaintiff argued that there were too many operations already underway and there was insufficient light for Mr. Valdespino to work. (Compl. ¶¶ 19-20.) Supervisor Barton dismissed Plaintiff's warnings and ordered Mr. Valdespino to begin the operation. (Compl. ¶ 21.) After five minutes, Mr. Valdespino aborted the operation, stating that it was too dark for him to see. (Compl. ¶ 25.) Because abandoning the operation was against procedure, Defendant ConocoPhillips fired both Mr. Valdespino and Plaintiff. (Compl. ¶ 29.)

Plaintiff and Mr. Valdespino initially brought their claim to the National Labor Relations Board. (Compl. ¶ 28.) At the Labor Board hearing, Defendant Gabriel Aparicio testified on behalf of Defendant ConocoPhillips. (Compl. ¶ 29.) He testified that neither Plaintiff nor Mr. Valdespino raised safety issues at the time. (Compl. ¶ 28.) Plaintiff avers that this is "obviously untrue." (*Id.* ¶ 29.) Explaining the untrue testimony, Plaintiff posits that Supervisor Barton "lied to Mr. Aparicio so as to push the blame to Plaintiff and Mr. Valdespino instead of where it belonged which was with him." (Compl. ¶ 30.)

On August 28, 2014, Plaintiff filed a Complaint with the Eleventh Judicial District Court in McKinley County, New Mexico. He asserted four causes of action to challenge his termination, all grounded in state law. (Compl.) He named ConocoPhillips and Mr. Aparicio as Defendants. (*Id.*) Asserting fraudulent joinder, Defendant invoked diversity jurisdiction to remove the action to this Court. (Doc. 1.) Defendants then moved to dismiss, on the ground that all of Plaintiff's causes of action are preempted by the National Labor Relations Act ("NLRA"). (Doc. 3.) Plaintiff opposed this motion. (Doc. 7.) In his response to the motion to dismiss, Plaintiff stated his objection to the removal. (Doc. 7 at 5 n.1). Two and half months later—and more than three and half months after the case was removed—Plaintiff filed a motion to remand. (Doc. 13.) The same day, Plaintiff filed a motion to amend his Complaint, stating claims against non-diverse parties. (Doc. 14.)

## II. DISCUSSION

Before deciding the motion to dismiss on preemption grounds, the Court must first determine whether it has jurisdiction over the claims. By itself, NLRA *Garmon* preemption does not provide a basis for removal jurisdiction. *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1165 (10th Cir. 2004) (finding that *Garmon* preemption does not provide a federal court with subject matter jurisdiction); *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908) (holding that defenses raising federal question cannot confer federal jurisdiction). NLRA preemption is a question which state courts can decide—and must decide if there is no independent basis for federal jurisdiction. *See United Ass'n of Journeymen, Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884, 887 (10th Cir. 1987) (reasoning that state courts may evaluate whether activity is protected under the NLRA). Therefore, the Court first decides whether the case was properly removed to this Court. Next, the Court will consider Defendants'

preemption arguments. Finally, the Court will address Plaintiff's motion to amend his Complaint. The Court must navigate carefully through jurisdictional thickets.

**A. Propriety of Removal**

This case was properly removed only if Defendants can prove that Plaintiff fraudulently joined Defendant Aparicio. Arguing that Plaintiff does not allege any plausible claims against Defendant Aparicio, Defendants removed this suit on the theory that Defendant Aparicio was fraudulently joined "for the sole purpose of defeating diversity jurisdiction." (Notice of Removal, Doc. 1 ¶¶ 7, 9.) Excluding Defendant Aparicio would make diversity complete because Plaintiff is a citizen of New Mexico and Defendant ConocoPhillips is incorporated in Delaware with a principal place of business in Texas. (*Id.* ¶ 6.) Complete diversity would give the Court subject matter jurisdiction over the suit. 28 U.S.C. § 1332.

If a plaintiff has no cause of action against a resident defendant and joins the defendant solely to prevent removal to federal court, the plaintiff has "fraudulently joined" the party. *Dodd v. Fawcett Pubs., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). To establish fraudulent joinder, the removing party must demonstrate either (1) actual fraud in the pleading of jurisdictional facts, or (2) the plaintiff's inability to establish a cause of action against the non-diverse party in state court. *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). The party seeking removal "bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.*

Plaintiff's Complaint states two causes of action against Defendant Aparicio: retaliatory discharge and prima facie tort. (Compl. ¶¶ 31-41.) If either cause of action is colorable, then Defendants cannot meet their fraudulent joinder burden. *See Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) ("[T]he removing party must show that the plaintiff has 'no cause of action'

against the fraudulently joined defendant."). In his Motion for Remand, Plaintiff explains that he stated causes of action against Defendant Aparicio because the Complaint alleges that Defendant Aparicio made material representations about Plaintiff. (Doc. 13 at 9.) The Complaint alleges that Defendant Aparicio issued Plaintiff two memos regarding missed safety meetings, which Plaintiff admittedly did not attend, although he claims he missed the meetings for good reasons. (Compl. ¶¶ 8-12.) The missed meetings occurred a year or more before Plaintiff was fired. (Compl. ¶¶ 5, 8, 10.) Plaintiff also avers that Defendant Aparicio misstated the truth about Plaintiff's dismissal during his testimony before the Labor Board. (*Id.* ¶ 28.) However, Plaintiff blames Supervisor Barton for the untrue testimony. He explains that "[t]he obvious conclusions is that Mr. Barton lied to Mr. Aparicio so as to push the blame to Plaintiff and Mr. Valdespino instead of where it belonged which was with him." (*Id.* ¶ 30.)

The facts in the Complaint do not state a viable claim for retaliatory discharge against Defendant Aparicio. Under New Mexico law, supervisors are not liable for the tort of retaliatory discharge unless the supervisor intentionally fired the plaintiff for his own interest, outside the scope of employment. *See Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 855 (N.M. 1994) (holding that individual defendants could not be held liable under a theory of retaliatory discharge based on actions done in the scope of employment). The Complaint accuses Supervisor Barton of lying to save his own skin, but absolves Defendant Aparicio of any intentional misconduct by explaining that Defendant Aparicio was misled by Supervisor Barton. (Compl. ¶¶ 38-30.) While the Complaint alleges a colorable claim against Supervisor Barton, he is not named as a Defendant. Meanwhile, the Complaint does not state a colorable retaliatory discharge claim against Defendant Aparicio.

Similarly, the Complaint does not state a viable prima facie tort claim against Defendant Aparicio. Defendants argue that this claim must fail because Plaintiff, an at-will employee, did not have a contractual relationship with Defendant Aparicio. (Doc. 25 at 4.) To support this argument, Defendants cite to dicta from one non-binding, unpublished Tenth Circuit opinion, *Cordova v. PNM Elec. & Gas Servs*., 72 F. App'x 789, 793 (10th Cir. 2003). The Court is not persuaded by Defendants' construction of the law. Prima facie tort is rooted in tort law, not contract law. After reviewing New Mexico law, the Court finds that an employment contract is not a required element of prima facie tort.

The elements of prima facie tort are: (1) an intentional, lawful act by defendant; (2) an intent to injure the plaintiff; (3) resulting injury to the plaintiff; and (4) insufficient justification for the defendant's acts. *Beavers v. Johnson Controls World Servs., Inc.*, 901 P.2d 761, 766 (N.M. 1995); N.M.R. Ann. § 13-1631 (New Mexico uniform jury instructions for prima facie tort). The doctrine was created to "provide remedy for intentionally committed acts that do not fit within the contours of accepted torts" or other established causes of action. *Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990); *see also Martinez v. Northern Rio Arriba Elec. Co-op., Inc*., 51 P.3d 1164, 1170 (N.M. Ct. App. 2002) ("Prima facie tort should be used to address wrongs that otherwise escape categorization, but should not be used to evade stringent requirements of other established doctrines of law.") (citations and quotations omitted). Employment relationships, let alone employment contracts, are not prima facie tort requirements. *See Schmitz*, 785 P.2d at 736 (recognizing prima facie tort where a bank lawfully but unfairly took possession of a promissory note belonging to a third party).

In New Mexico, at-will employees can assert prima facie tort claims against their employers and against their supervisors. Prima facie tort claims are cognizable in the

employment context by at-will employees. *See Martinez*, 51 P.3d at 1171 (considering merits of prima facie tort by plaintiff who also asserted breach of implied contract claim, implying employee did not have a contract). Any individual, including supervisors, can be held liable for prima facie torts. *See Beavers*, 901 P.2d at 763 (finding plaintiff had sufficient evidence to bring prima facie tort claim against supervisor for making belittling comments in front of coworkers); *Silverman v. Progressive Broad., Inc.*, 964 P.2d 61, 72 (N.M. Ct. App. 1998) (reasoning that former general manager and general sales manager could be liable for prima facie tort). Employees cannot use prima facie torts to challenge lawful terminations, but they can challenge tortious conduct. *Compare Hill v. Cray Research, Inc.*, 864 F. Supp. 1070, 1079 (D.N.M. 1991) (holding that an employee cannot use prima facie tort to evade established tenets of at-will employment law), *with Silverman* 964 P.2d at 72 (holding that employee stated prima facie tort claim against former supervisors for writing an insulting letter).

The Court agrees with Defendants that prima facie torts are limited causes of action. *See Lexington Ins. Co. v. Rummel*, 945 P.2d 992, 995 (N.M. 1997) ("In recognizing prima facie tort, this Court emphasized the importance of limiting the cause of action."). "[T]o establish a prima facie tort, a plaintiff must prove that the tort-feasor acted maliciously with the intent to cause the injury and without sufficient justification." *See Beavers*, 901 P.2d at 768 (citing *Schmitz*, 785 P.2d at 735). "If there is no intent to injure, then there is no need to conduct the balancing test" to weigh the justification against the harm. *See Lexington Ins. Co.*, 945 P.2d at 995. Plaintiff's Complaint does not contain any allegations that Defendant Aparicio acted with malice or intended to injure Plaintiff. In fact, the Complaint undermines any allegation that Defendant Aparicio acted maliciously because it alleges that Supervisor Barton purposefully misled Defendant Aparicio. (Compl. ¶¶ 38-30.) In turn, Defendant Aparicio was not acting maliciously

when he testified before the Labor Board; he was merely performing his job duties. Without a showing of malice or intent to injure, Plaintiff cannot state a prima facie tort claim against Defendant Aparicio. As a result, the Complaint does not state a colorable prima facie tort claim against Defendant Aparicio.

Because Plaintiff does not have any cognizable causes of action against Defendant Aparicio, the claims against him in the original Complaint are dismissed. Defendants prevail on their fraudulent joinder theory and the suit was properly removed to this Court. Accordingly, the Court has jurisdiction to consider Defendants' Motion to Dismiss.

**B. Motion to Dismiss**

Invoking the doctrine of *Garmon* preemption, Defendants seek to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that the case must be dismissed because all of Plaintiff's claims fall under the primary, and exclusive, jurisdiction of the National Labor Relations Board. (*Id.*) If Defendants are correct, neither this Court nor the state courts have jurisdiction to decide the claim. *See Felix*, 387 F.3d at 1166 ("If *Garmon* preemption applies, the correct result is that neither the federal court nor the state court has jurisdiction.").

When a defendant raises a facial challenge to a district court's jurisdiction, the court's review is similar to that of a 12(b)(6) motion. *See Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1157 (10th Cir. 2000) ("Accepting the complaint's allegations as true, we consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted."). The court must accept the factual allegations as true, *id.*, and make all reasonable inferences in the plaintiff's favor, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Defendants, as the party arguing preemption, have the burden to persuade the Court that it lacks jurisdiction. *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986).

The *Garmon* doctrine preempts state laws and claims that are "arguably subject" to Section 7 or 8 of the NLRA. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). The *Garmon* doctrine has two well-recognized exceptions. *Id*. at 243-44. First, preemption does not apply when "the conduct at issue is only a peripheral concern of [the NLRA]." *Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983) (citing *Garmon*, 359 U.S. at 243-44). Second, conduct is not preempted if it "touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." *Id.* (citing *Garmon*, 359 U.S. at 243-44).

To determine if these exceptions apply, the reviewing court must balance the state's interest in protecting its citizens "against both the interference with the [Labor] Board's ability to adjudicate controversies . . . , and the risk that the state will sanction conduct that the Act protects." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498-99 (1983) (citations omitted). Preemption doctrines should be applied narrowly. *See Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("[The] Court does not support an approach which sweeps away state-court jurisdiction over conduct traditionally subject to state regulation without careful consideration . . . ."). Preemption should not bar state claims unless the claims would create a "realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." *Id.* at 198.

The Court carefully evaluates Defendants' claim that all "Plaintiff's claims must be adjudicated by the NLRB." (Doc. 24 at 5.) The Court will not easily cede jurisdiction because the Constitution mandates that the judicial branch resolve "matters of common law and statute as well as constitutional law, issues of fact as well as issues of law . . . ." *Stern v. Marshall*, 131 S.

Ct. 2594, 2609 (2011) (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86 n.39 (1982)). The Labor Board was designed to enforce federal labor statutes, not state laws. *See Sears*, 436 U.S. at 188 (holding that NLRA preemption doctrine cannot "sweep[] away state-court jurisdiction over conduct traditionally subject to state regulation. . . .").

Defendants argue that all of Plaintiff's claims are preempted because they "are based on the same common nucleus of operative facts" as his anti-union retaliation claim. (Doc. 8 at 6.) That, however, is not the test for preemption. "[A] state law claim is not automatically preempted simply because the facts underlying the claim may also support an action" governed by federal labor law. *Ertle v. Cont'l Airlines, Inc.*, 136 F.3d 690, 693 (10th Cir. 1998) (applying Section 301 preemption). For instance, in *Farmer*, the Supreme Court held that the plaintiff's state tort claim was not preempted, even though the facts could have supported an unfair practice charge. *Farmer v. United Bhd. of Carpenters & Joiners of Am.*, 430 U.S. 290, 302 (1977); *accord Linn v. Plant Guard Workers*, 383 U.S. 53, 63 (1966) (finding plaintiff's defamation claim not preempted, although it arose as part of a labor dispute). Thus, the question is not whether "the arguable [labor] violation and the state tort arose in the same factual setting," but whether "the respective controversies presented to the state and federal forums would [] have been the same." *Sears*, 436 U.S. at 196-97. Only where the state law controversy is "identical" to the controversy which could have been presented to the Labor Board does the claim "involve[] a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Id.* at 197. Preemption's sweep is not as broad as preclusion's sweep.

To be subject to *Garmon* preemption, the relevant conduct first has to be "arguably subject" to Section 7 or 8 of the NLRA. Section 7 of the NLRA gives employees the right "to

bargain collectively . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." NLRA § 7, 29 U.S.C. § 157.[1] Thus, if an employee's conduct was related to collective bargaining rights or other concerted activity as defined under the NLRA, then the Board has primary jurisdiction and the Court must dismiss the claim for lack of jurisdiction. The phrase "arguably subject to" has teeth. *Davis*, 476 US at 394. "It is not satisfied by a conclusory assertion of pre-emption . . . ." *Id.*

To prevail on this motion, Defendants must present evidence to show that each of Plaintiff's state law claims is preempted. *Id.* at 395. Plaintiff alleges four causes of action, each of which present distinct, alternate theories for his termination. In sum, Plaintiff argues that (1) Defendants committed a prima facie tort; (3) Defendants breached Plaintiff's implied contract; (3) and the procedures in the implied contract, and (4) Defendants wrongfully terminated him because of his "protected conduct" in "donating his organ, attempting to unionize, and attempting to promote safety." (Compl. ¶¶ 31-50.) Defendants argue that all four causes of actions are preempted in their entirety. (Doc. 3 at 2.)

***1. Prima Facie Tort***

Plaintiff alleges that Defendants committed a prima facie tort by disciplining him without justification. (Compl. ¶¶ 36-41.) Primarily, Plaintiff appears to allege that based on his complaints about his supervisors, Defendants retaliated against him. (*Id.*) Plaintiff's complaints about his supervisors' violations would involve different spans of time, different witnesses, and different questions of law than Plaintiff's anti-union retaliation claim. At least one of the complaints occurred before Plaintiff ever spoke with union organizers. (*Id.* ¶¶ 6, 16.) The prima facie tort claim presents a different controversy than any labor dispute that could have been

---

[1] Section 8 describes employers' unfair labor practices in the union context. NLRA § 8, 29 U.S.C. § 158.

presented to the Labor Board. Therefore, Plaintiff's claim is not preempted by *Garmon*. *Sears*, 436 U.S. at 197. Defendants make no effort to show why this conduct is regulated by, or otherwise subject to, the NLRA. Because Defendants do not meet their burden, the Court declines to consider this claim preempted.

***2. Breach of Implied Contract and the Procedures Therein***

In Counts III and IV, Plaintiff claims that Defendants created an implied contract which required certain procedures, and then breached the contract. (Compl. ¶¶ 42-50.) Plaintiff's implied contract claims are not related to his anti-union retaliation claim either legally or factually. Again, Defendants make no effort to show why this conduct is subject to the NLRA. The Court declines to consider this claim preempted.

***3. Retaliatory Discharge***

Plaintiff has three discrete bases for his retaliatory discharge claim. He claims that he was fired in retaliation for his unionizing activity, for taking leave to donate an organ, and for complaining about work safety issues. (Compl. ¶ 32.) Each basis presents a distinct, alternate theory to explain Plaintiff's termination.

One of the bases for Plaintiff's retaliatory discharge claim—anti-union retaliation—is clearly subject to, and preempted by, the NLRA. If Defendants retaliated against Plaintiff for his union activities, they violated clear prohibitions in the NLRA. 29 U.S.C. § 158(a). As such, Plaintiff's anti-union retaliation claims are preempted by *Garmon*. *See Cumpston v. Dyncorp Technical Serv., Inc.*, 76 F. App'x 861, 865 (10th Cir. 2003) ("[T]o the extent plaintiff's pleadings assert a claim for anti-union retaliation, we hold the claim barred by *Garmon* preemption . . . ."). In so far as Plaintiff's claim is based on anti-union retaliation, the theory is preempted and the Court does not have jurisdiction to hear such an argument. *Id.*

The second alleged basis—disability leave retaliation—is neither protected nor prohibited by the NLRA. The NLRA does not address an individual employee's rights to take disability leave. Thus, *Garmon* preemption does not apply to this claim.

The third alleged basis—work safety whistleblowing—is not as easily determined. Whistleblower claims are not protected or prohibited by the National Labor Relations Act. Plaintiff's complaints, however, related to workplace conditions and were made on behalf of a coworker. By making those complaints, Plaintiff engaged in concerted activity for mutual aid and protection. Because any concerted activity done for mutual aid is protected conduct, *NLRB v. Washington Aluminum, Co.*, 370 U.S. 9 (1962), this conduct is arguably subject to the NLRA. Notwithstanding, Plaintiff's claim is not preempted because it falls into the *Garmon* exceptions.

Under Defendants' broad interpretation of *Garmon*, almost all state laws protecting employees who report job safety violations—regardless of the employee's union status—would be preempted. That cannot be the outcome. States have a "strong interest in protecting workers who make job safety complaints . . . ." *Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 95 (8th Cir. 1992). New Mexico codified its interest in workplace safety in an Occupational Health and Safety Act. N.M. Stat. Ann. § 50-9-2, *et seq*. The Supreme Court refused to prohibit states from regulating conduct that is within the scope of *Garmon*, but deeply rooted in local interests. *See United Ass'n of Journeymen*, 834 F.2d at 887 ("The *Garmon* doctrine does not, however, preempt all local regulation that in any way touches or concerns the employment relationship.").

> In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects.

*Id.* (quoting *Belknap*, 463 U.S. at 498-99).

In contrast to the state's concern in this area, federal labor concerns are not strongly implicated by this claim. Plaintiff's claim that he was fired for reporting work safety violations would not interfere with the Labor Board's jurisdiction or the federal labor scheme. A whistleblower claim can be adjudicated without resolving any labor disputes. The questions of law are distinct and any findings would not interfere with the Labor Board's findings. For instance, if the Court found no violation on the whistleblower claim, the Board would be free to decide the labor issue however it chooses. On the other hand, if the Court finds that Plaintiff was retaliated against for reporting safety issues, it would not supplant a Labor Board's decision that he was—or was not—terminated because of his union activity. Defendants could have fired Plaintiff for more than one reason. "Mixed motive" terminations, where an employer fires an employee for multiple reasons including union activity, are considered violations of Section 8(a). *Wright Line*, 251 N.L.R.B. 1083, 1089 (1980). Thus, regardless of the judgment on the tort claims, the Labor Board would be free to make its own determination without interference. Because the tort issue can be decided without resolving the labor dispute, the Court's adjudication of the tort issue will not upend the Labor Board's authority.

Balancing New Mexico's interest in protecting its citizens from workplace retaliation against the interference with the Labor Board and the federal labor scheme, the Court finds New Mexico's interest to be weightier. Workplace retaliation claims "touch[] on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." *Jones*, 460 U.S. at 676 (citing *Garmon*, 359 U.S. at 243-44). Accordingly, Plaintiff's retaliatory discharge claims based on work safety complaints are not preempted. This conclusion is in line with numerous federal cases that have found that federal labor law does not preempt

whistleblower claims. *See, e.g., Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) (finding federal labor law did not preempt employee's claim of discharge in violation of public policy for reporting fraudulent maintenance records); *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473 (6th Cir. 1990) (finding federal labor law did not preempt employee allegations of retaliation for filing workers' compensation claims); *Vincent v. Trend W. Technical Corp.*, 828 F.2d 563, 566 (9th Cir. 1987) (finding federal labor law did not preempt plaintiff's whistleblower retaliation claim); *Sandoval v. New Mexico Tech. Grp. LLC.*, 174 F. Supp. 2d 1224, 1229 (D.N.M. 2001) ("Plaintiff's state OSHA claim is appropriate for a classic [retaliatory discharge] analysis."); *Romero v. Mason and Hanger-Silas Mason Co., Inc.*, 739 F. Supp. 1472 (D.N.M. 1990) (finding federal labor law did not preempt state law claims of discharge in violation of public policy).

Whistleblower claims could, under different circumstances, interfere with the Labor Board's jurisdiction. Similar claims could be covered by a union's collectively bargained agreement, and would thus be preempted by federal labor law. *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (applying Section 301 preemption). Here, there is no collective bargaining agreement.

In making this determination, the Court makes no comment on the merits nor the plausibility of the claims against Defendant ConocoPhillips. The parties did not fully brief those issues. The Court only decides a narrow question: does the National Labor Relations Board have primary jurisdiction over the entirety of Plaintiff's claims? Without a doubt, Plaintiff cannot base his retaliatory discharge claim on an anti-union retaliation theory without reaching into the Labor Board's jurisdiction. The same is not true, however, of Plaintiff's other theories and claims. Plaintiff's other theories are distinct from his anti-union retaliation argument—they are

not mere attempts to dress up a preempted claim in different legal language. *See Farmer*, 430 U.S. at 305 (reasoning that a claim may be preempted if the conduct was purely a "function of the actual [anti-union] discrimination itself"). They are separate legal claims, made in the alternate, to challenge Plaintiff's termination.

While the Court will not consider the retaliatory discharge claim on the basis of anti-union animus, the Court will consider Plaintiff's retaliatory discharge claim on the bases of disability leave and whistleblower retaliation. Plaintiff's prima facie tort and implied contract claims are also not preempted. Overall, while the Court dismisses the anti-union retaliation theory, none of Plaintiff's claims are entirely preempted. For that reason, Defendants' motion to dismiss is denied.

**C. Motion to Amend**

Plaintiff moves to amend his Complaint. (Doc. 14.) In the proposed amended complaint, Plaintiff would add new state law claims against Defendant Aparicio, who was dismissed from the Complaint earlier in this opinion, and add Supervisor Barton as a Defendant in the case. (Doc. 14-1.) Plaintiff notes that the Court should freely give leave to amend. (Doc. 14 at 1.) Opposing the amendment, Defendants argue that the proposed new claims are futile because they are preempted by the NLRA. (Doc. 24 4-10.) The Court finds this argument wholly unavailing as discussed above. The new claims are preempted only to the extent that the prior claims were preempted. In other words, Plaintiff cannot bring any claims that relate to his union activity. He is free to bring claims based on conduct that is entirely separate from his union organizing.

Complaint amendments are governed by Rule 15. When a party moves to amend its complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court notes that the litigation is in its infancy and, considering the relatedness of

the claims, permitting the amendment would usually serve the interest of justice. However, this proposed amendment is complicated by the fact that, if allowed, the joinder of Mr. Aparicio and Mr. Barton would defeat diversity and the Court's subject matter jurisdiction. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

In such situations, the Court must follow a three-step analysis and consider (1) whether the party is necessary; (2) whether the party is indispensible; and (3) under the principles of venue and jurisdiction, whether it would be proper for the Court to retain jurisdiction. *See Salt Lake Tribune Pub. Co. v. AT & T Corp.*, 320 F.3d 1081, 1096 (10th Cir. 2003) (describing multistep inquiry). To conduct this analysis, the Court must look to "the facts as they existed when the case was filed." *Id.* at 1097 (quoting *Am. Nat. Bank & Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984)).

Under Rule 19(a), a party is necessary when, among other reasons, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). If a plaintiff sues a company and its employees under a theory of respondeat superior, then a court can hold an employer liable without joining the employees. *See Lopez, Sr. v. Las Cruces Police Dep't*, 137 P.3d 670, 676 (N.M. Ct. App. 2006) ("[A] lawsuit based on the doctrine of respondeat superior does not require an employee to be named as a defendant."). Through the vicarious liability doctrine of respondeat superior, a court can provide complete relief without joining all the implicated parties. However, that is not the case here. Plaintiff alleges that Supervisor Barton lied out of self-interest, and would hold him and Defendant Aparicio separately liable for several causes of action. (Doc. 14-1 ¶ 32, 53-79.) The Court

cannot hold Defendant ConocoPhillips liable for the intentional torts of employees who are acting beyond the scope of employment. *See Los Ranchitos v. Tierra Grande, Inc.*, 861 P.2d 263, 267 (N.M. Ct. App. 1993) (citing *McCauley v. Ray*, 453 P.2d 192, 201-02 (N.M. 1968) ("An employer may be liable under the doctrine of respondeat superior for an intentional tort committed by its employee if the wrongful acts are committed in the course and scope of his or her employment."). In this case, refusing to join Supervisor Barton and Defendant Aparicio would materially reduce the likelihood that the Court can provide make-whole relief to Plaintiff. For that reason, the Court concludes the Supervisor Barton and Defendant Aparicio are necessary parties.

To determine whether a party is indispensible, the Court looks to the factors in Rule 19(b). *See Salt Lake Tribune*, 320 F.3d at 1096; *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998) ("Whether a party is indispensable, considering the factors required under Rule 19(b), is a matter left to the district court's discretion."). The factors include (1) the adverse consequences of proceeding without the party; (2) the ability to avoid adverse consequences; (3) the adequacy of the judgment without the party; and (4) the availability of another forum. Fed. R. Civ. P. 19(b). The persuasive value of each factor depends on the case. *See Glenny v. Am. Metal Climax, Inc.*, 494 F.2d 651, 653 (10th Cir. 1974) ("Rule 19(b) does not state what weight is to be given each factor and thus we must determine the importance of each factor on the facts of each particular case and in light of equitable considerations.") (citation omitted).

All four factors weigh in favor of finding the proposed defendants indispensible. First, the Court considers the adverse consequences of proceeding without Supervisor Barton and Defendant Aparicio. If the Court proceeds without these individuals, Plaintiff will have to bring

his claims against them in state court. That would be a waste of judicial and party resources. Having parallel actions also creates a risk of inconsistent judgments. Second, the Court must evaluate whether it can avoid adverse consequences by inserting protective provisions in the judgment, shaping the relief, or other measures. *See* Fed. R. Civ. P 19(b)(2) (suggesting tools for reducing prejudice). The Court sees no ready way to lessen the adverse consequences. Third, as discussed above, the judgment will not be adequate without the presence of Supervisor Barton and Defendant Aparicio. Plaintiff will not be able to remedy all of his claims in this Court against Defendant ConocoPhillips alone. Finally, and most persuasively here, the Plaintiff has an alternate forum available. This litigation began in state court and can be fully litigated in state court. In state court, Plaintiff can bring his claims against Defendant ConocoPhillips, Defendant Aparicio, and Supervisor Barton.

Looking to the Rule 19(b) factors, the Court finds that Supervisor Barton and Defendant Aparicio are indispensible parties to this litigation. Plaintiff may amend his Complaint to join Supervisor Barton and Defendant Aparicio. Because joining Supervisor Barton and Defendant Aparicio as defendants destroys the diversity of the parties, the Court remands the case to state court. 28 U.S.C. § 1447(e). Although the case was properly removed to this Court at the time of removal, the Court determines that it must allow a complaint amendment that undermines the Court's basis for jurisdiction. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("[A] case can be properly removed and yet suffer from a failing in *subject-matter jurisdiction* that requires remand.").

As a final matter, Plaintiff sought attorneys' fees for his motion to remand based on the alleged improper removal. (Doc. 13 at 10.) The Court declines to award attorneys' fees because it denied remand on the ground that Plaintiff argued. The Court now remands based on lack of

subject matter jurisdiction. An award of attorneys' fees for removal on this ground would be inappropriate.

## III. CONCLUSION

In this opinion, the Court resolves three motions, all of which were contested, all of which challenged the Court's jurisdiction. First, on Plaintiff's motion contesting removal and seeking remand, the Court is satisfied that the case was properly removed to this Court. For that reason, Plaintiff's motion is denied. Second, the Court denies Defendants' motion to dismiss for preemption. Third, the Court grants Plaintiff leave to amend his Complaint. Granting the amendment, however, defeats the Court's subject matter jurisdiction, so the Court remands the case to the Eleventh Judicial District Court in McKinley County, New Mexico.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Plaintiff's Motion to Remand (Doc. 13) is **DENIED**;

(2) Defendants' Motion to Dismiss (Doc. 3) is **DENIED**;

(3) Plaintiff's Motion to Amend/Correct Plaintiff's Complaint (Doc. 14) is **GRANTED**; and

(4) The case is **REMANDED** to state court.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**